

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**ROBERT GARRISON,**          )
                                  )
               Plaintiff,    )
                                  )
     v.                      )    No.  05 C 1001
                                  )
**THE CITY OF CALUMET CITY,**  )
**ILLINOIS, a unit of local**  )
**Government, and MICHELLE**  )
**QUALKINBUSH, in her individual**  )
**and official capacities,**      )
                                  )
             Defendants.   )

## MEMORANDUM OPINION AND ORDER

The plaintiff, Robert Garrison ("Garrison"), has filed claims against defendants Michelle Qualkinbush ("Qualkinbush") and the City of Calumet City ("Calumet City") alleging violations of his First Amendment rights. Garrison began working full time for Calumet City on August 27, 1990 as a helper in the public works department. On August 12, 1991, Garrison was transferred to the water department to work as an operator. In 1993, Garrison's neighbor, Jerome Genova, was elected mayor of Calumet City. Garrison was an active political supporter and friend of Genova. In January 1999, Genova appointed Garrison to the position of supervisor in the public works department.

After serving as a supervisor in the water department for more than two years, on May 15, 2001, Genova appointed Garrison to the

1

position of Coordinator for the Department of Community and Economic Development ("CED Coordinator"). The position of CED Coordinator is a position appointed by the mayor with the consent of the city council. Genova served as mayor of Calumet City until October 2001, at which time he was indicted and resigned from the post. Garrison's term as CED Coordinator ended when Genova resigned. After Genova's resignation, Alderman Dominick Gigliotti was appointed to serve as mayor. As mayor, Gigliotti reappointed Garrison to the position of CED Coordinator.

In April, 2003, a special election was held to fill Genova's remaining term. In this election, Gigliotti ran against Qualkinbush and Gregory Skubisz ("Skubisz"). Qualkinbush had served in the Genova administration as city clerk. Skubisz was an alderman in Calumet City. According to Garrison, Skubisz was a political enemy of Genova and "despised [Garrison] for his friendship and association with Genova." Garrison supported Gigliotti in the special election. Ultimately, Skubisz won the election. Upon becoming mayor, Skubisz did not reappoint Garrison to the position of CED Coordinator and instead appointed Rebecca Woyjewoda (" Woyjewoda") in his place.

By operation of a city ordinance, having not been reappointed, Garrison was to return to the last non-supervisory position he held prior to his appointment to a supervisory position. Calumet City Ordinance 2-20 § 2-231 states:

2

In the event the mayor appoints an employee who has worked for the city in excess of three (3) years to head any department of the city or in a supervisory position not covered by any union contract, such employee shall be entitled to return to the position held with the city prior to the appointment as such department head or supervisor in the even such appointment does not receive the consent of the city council or such appointment is not renewed after the term has expired.

The city determined that Garrison's last non-supervisory position was as a helper in the public works department.[1] The city sent a letter to Garrison dated June 25, 2003 stating that he was to report to the Director of Public Works by July 1, 2003 or the City would consider him to have voluntarily terminated his position.[2] Garrison never reported to the public works department.

---

[1] Garrison disputes that this was the last non-supervisory position he held. According to Garrison, the last non-supervisory position he held was the position of pump station operator in the water department. According to Garrison, he held this position until he was appointed by Genova to the position of supervisor in the public works department on January 6, 1999.

According to defendants, who rely on Garrison's written personnel records, Garrison was transferred to the position of helper in public works department on January 6, 1999 and did not assume the position of supervisor until January 15, 1999. Thus, according to defendants, Garrison was properly instructed to return the position of helper in the public works department.

Garrison admits that his personnel file states this much, but denies the accuracy of the records. Although the parties dispute this issue, it does not represent a genuine issue of material fact because it is not relevant to any theory of recovery Garrison has presented in his brief in opposition to summary judgment. Garrison has not brought a claim for violation of municipal law and has not based his federal claims upon his being forced to return to the public works department.

[2] Garrison claims he did not receive this letter until July 8th or 9th.

3

On July 22, 2002, Calumet City sent a letter to Garrison informing him that since he had not returned to work, his employment with Calumet City had ended.

In September 2003, Qualkinbush successfully challenged Skubisz's election victory earlier that year and became the mayor of Calumet City.[3]  At the time Qualkinbush took office, Garrison was no longer employed by Calumet City in any capacity. Qualkinbush did not appoint Garrison to the position of CED Coordinator in her administration nor did she return him to the position of pump station operator in the water department.

According to Garrison's complaint, in early 2005 Qualkinbush and Garrison attempted to work out an agreement that would return Garrison to the position of water pump operator in the Water Department.  Garrison claims that Qualkinbush offered to help him return to that position in exchange for his public support in the upcoming 2005 mayoral election.  Qualkinbush acknowledges that she attempted to work out an agreement with Garrison, but denies Garrison's return was conditioned upon his political support. Qualkinbush disputes that a final agreement was ever reached and the parties dispute the terms of any such agreement.[4]  To this

---

[3] According to Skubisz's deposition, Qualkinbush's challenge was based on allegations of fraud involving "the mishandling of absentee ballots, specifically handicapped absentee ballots."

[4] Both parties have submitted a written document to the court containing what they assert were the terms of the contemplated agreement.  Defendants have submitted an "Agreement

4

date, Garrison has not returned to the Water Department.

Garrison filed a complaint against Calumet City and Qualkinbush alleging: 1) § 1983 claims for violations of his First Amendment rights to free speech and freedom of association; and 2) § 1985 claims for a conspiracy to violate his First Amendment rights to free speech and freedom of association. Defendants seek summary judgment on all claims. Garrison concedes to the entry of judgment on his § 1985 conspiracy claims. For the following reasons, defendants' motion on Garrison's § 1983 claims is granted.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmoving party must offer something more than a 'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is

---

and Release" that states that Garrison would be hired to work in the pumping station in exchange for a release of all claims against Calumet City. The agreement does not contemplate back pay and is unexecuted by either party. Garrison has submitted a letter sent by his attorney to Calumet City's counsel stating that Garrison would return to work as a pump station operator. The letter also contains a specific demand for backpay of $65,884.00.

some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Garrison presents four theories of recovery: 1) against Calumet City for Skubisz's decision not to reappoint him to the position of CED Coordinator in April 2003; 2) against Calumet City for Skubisz's failure to return Garrison to the his position in the Water Department; 3) against Calumet City and Qualkinbush for her decision not to reappoint him to the position of CED Coordinator in September 2003; and 4) against Calumet City and Qualkinbush for impermissibly conditioning his return to the position of pump station operator on his political support for her campaign in the 2005 Calumet City mayoral election.[5]

## I. Skubisz's Failure to Reappoint Garrison to the CED Coordinator

---

[5] Counsel for the parties have spent an inordinate amount of time in conjunction with this motion engaging in personal attacks against one another and filing motions to strike the other's filings for various technical violations. In addition to defendants' motion for summary judgment, the court has before it: plaintiff's motion to strike defendant's motion for summary judgment; plaintiff's motion to strike defendants' statement of material facts; plaintiff's motion for sanctions in connection with their motion for summary judgment and statement of material facts; defendants' motion to strike plaintiff's motion to strike and plaintiff's motion for sanctions; and plaintiff's motion to strike defendants' reply to plaintiff's response to defendants' statement of material facts. These motions are all denied as moot. The Court did not rely on any statements that did not comply with Local Rule 56.1 and any other violations that may have occurred were irrelevant to my resolution of the claims.

6

Position

Garrison argues that Skubisz's decision not to reappoint him to the position of CED Coordinator was impermissibly based upon political considerations (i.e. his past support for Genova or his failure to support Skubisz in the special election) and therefore violated his First Amendment rights. This is a cognizable claim under federal law and is properly analyzed as a patronage hiring / firing claim.[6] See Heideman v. Wirsing, 7 F.3d 659, 662 (7th Cir. 1993) (explaining the distinction between public employee First Amendment freedom of expression claims and patronage employment decision claims); See also Riley v. Blagojevich, 425 F.3d 357, 365 (7th Cir. 2005) (stating that a free speech claim in these circumstances is "merely a restatement of [a] claim that political affiliation is a forbidden criterion for the [position]"). Although Skubisz is not a defendant in this action, Garrison can still state a claim under § 1983 against Calumet City if he is able to establish municipal liability for Skubisz's actions . The fact that Garrison's claims involve patronage of an individual candidate (or lack thereof) rather than a political party does not change the analysis. See Heideman, 7 F.3d at 663 n.4 ("The fact that Upton as well as this case involve the support of an individual candidate rather than party affiliation more broadly is of no consequence.").

---

[6] The only protected activity presented in his opposition brief is "support of an opposing political candidate."

7

Defendants argue in response that Skubisz's decision was permissible because the position of CED Coordinator is a position exempt from the First Amendment's ban on patronage hiring / firing. In order for the court to find a position exempt, the hiring authority must "demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Americanos v. Carter*, 74 F.3d 138, 140 (7th Cir. 1996) (quoting *Branti v. Finkel*, 445 U.S. 507, 518 (1980)). In order to determine if political affiliation is an appropriate requirement, "[t]he test is whether the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir. 1981). Thus, "[a]ny employee who has a significant amount of discretionary responsibility to implement policy could also 'reasonably serve to threaten the policy goals of the party in power'" and is exempt from First Amendment protection. *Snyder v. Blagojevich*, 332 F. Supp. 2d 1132, 1137 (N.D. Ill. 2004) (quoting *Selch v. Letts*, 5 F.3d 1040, 1044 (7th Cir. 1993)).

If the duties of a position are clearly outlined, a court may make the determination as to whether a position is exempt as a matter of law. *Riley,* 425 F.3d at 361 ("Such inquiry [into whether the job is one for which political affiliation is a permissible

8

criterion because it involves either policymaking or confidentiality] presents a question of law informed solely by the job description and the powers of office.") (quoting *Danahy v. Buscaglia*, 134 F.3d 1185, 1191 (2d Cir. 1998)). In performing this analysis, "[the court's] focus is on the 'inherent powers' of the office, not what any individual officeholder actually does." *Meeks v. Grimes*, 779 F.2d 417, 420 n.1 (7th Cir. 1985).

Turning to the case at hand, I must determine if the job of CED Coordinator is an exempt position. The starting point for this analysis is the official job description, if one exists. *See Riley*, 425 F.3d at 360-61. The CED Coordinator is the head of the Community and Economic Development Department ("CED Department"). The Calumet City Code states:

ARTICLE II. DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOPMENT

Sec. 18-31 Creation.
There is hereby created the department of community and economic development.
. . .

Sec. 18-32. Purpose.
The purpose of the department shall be to develop programs for neighborhood rehabilitation and community preservation and to promote and secure economic development for the benefit of the city.
. . .

Sec. 18-33. Executive board; membership; duties.
There shall be an executive board composed of not less than four (4) nor more than five (5) members, appointed by the mayor with the consent of the city council, who shall be current employees of the city and whose duties shall consist of making regular recommendations to the

9

mayor and city council on matters of economic development, developing job descriptions of departmental employees and making recommendations for the position of economic development coordinator.

. . .

Sec. 18-34. Coordinator.
There is hereby created the position of economic development coordinator of the department of economic and community development, who shall be appointed by the mayor with the consent of the city council.

. . .

Sec. 18-35. Employees.
Such personnel as deemed necessary by the city council shall be employed in the department at such wages and compensation as set from time to time by the city council.

. . .

The job description for the CED Coordinator gives little indication of the CED Coordinator's specific duties. The accompanying statutory language and the overall structure of the Calumet City government, however, provide enough information about the position so that the court is able to determine that the position is exempt from First Amendment protection.

The facts in this case are similar to those in *Heck v. City of Freeport*, 985 F.2d 305 (7th Cir. 1993). In *Heck*, the court evaluated the question of whether an incoming mayor's failure to reappoint the former general inspector violated the First Amendment. By operation of Illinois and municipal law, the position of general inspector was appointed by the mayor and his term lawfully ended when that mayor's term ended. *Id.* at 307-08. The court first noted that the line of patronage cases had been

10

extended beyond firings and Heck could bring a claim based upon the mayor's "failure to reappoint" him. *Id.* at 308. The court held, however, that the position of general inspector was exempt from the First Amendment's protection. Although the official job description gave little indication of Heck's specific duties, the court was able to make its determination based upon the overall structure of the Freeport government and other facts in the record. *Id.* at 309-10. The court first noted that the general inspector was the highest ranking employee in one of the city's ten primary departments (the health department). *Id.* at 309. The court then stated:

> Most important is the fact that the General Inspector's term was limited to that of the mayor. If the rule limiting the terms of certain offices exists so that a mayor can staff those positions with people who share his views about municipal policy, then political affiliation would seem not merely a permissible, but actually a desirable criterion for those appointments. . . . We conclude that the district court properly found the position of General Inspector to be exempt from the ban on patronage dismissals.

*Heck*, 985 F.2d at 310.

According to the record, the CED Department is one of approximately fifteen departments in Calumet City. The CED Coordinator is the highest ranking employee in the CED department, which is tasked with "develop[ing] programs for neighborhood rehabilitation and community preservation and to promote and secure economic development for the benefit of the city." The statute contemplates that the CED Coordinator would have a staff of

11

employees, although it is unclear from the record how many employees are actually employed in the CED Department. Additionally, according to the undisputed record, the CED Coordinator is accountable to the mayor and works with many other high level officials including the city clerk, a number of city attorneys, and a number of aldermen. The CED Coordinator prepares and submits a budget to the city council and has discretion to spend within that budget. The CED Coordinator is also required under municipal law to "submit to the city council at the first regular council meeting each month, a monthly report of all activities for the prior month." And under *Heck*, most importantly, the position of CED Coordinator is appointed by the mayor and by operation of Illinois law, his term of office could not exceed that of the mayor. *See* 65 ILCS 5/3.1-30-5(c).[7] Following *Heck*, these factors instruct that the position of CED Coordinator is a position for which political affiliation is permissible. *Heck*, 985 F.2d at 310; *See also Bicanic v. McDermott*, 867 F.2d 391, 393 (7th Cir. 1989) (citing factors such as preparing a budget as evidence of an exempt position); *Wilhelm v. City of Calumet City*, 409 F. Supp. 2d

_____

[7] It is unclear from the record if the CED Coordinator had to be reappointed annually by the mayor, or only when a new mayor began his term. Garrison does not contest and it is therefore undisputed, however, that the term of the CED Coordinator necessarily ended when the appointing mayor ended his term. For example, as the record demonstrates, when Genova abruptly resigned, Garrison was reappointed by Gigliotti. Accordingly, because the CED Coordinator's term could not extend into the term of a new mayor, this case is controlled by *Heck*.

12

991, 1000 (N.D. Ill. 2006) (finding the director of the health center and youth and family services in Calumet City, which is also a position appointed by the mayor, is an exempt position).

The testimony of the three deponents in this case who each at one point in time served as mayor of Calumet City further corroborates the above conclusion. Skubisz, who terminated Garrison, testified:

Primarily what [the CED Coordinator] would do would be to administer and pretty much oversee the implementation of community and economic development grants. They would work as a liaison between commercial entities hoping to expand in the city or relocate to the city. They would further work as a liaison, if you will, between Cook County, the State of Illinois and other – the federal government, other governmental entities, Metropolitan Sanitary District, insofar as, if you will, promoting Calumet City and attempting to attract as much business as one possibly can within Calumet City.

Qualkinbush testified that the duty of CED Coordinator was "to promote and attract business to Calumet City" and to work with current businesses on the "redevelopment of their business or expansion . . . ."

Genova testified that the duties of the CED Coordinator were:

[To] promote our various economic development areas. He would work with new businesses coming to the community, interact with them, all areas, in the established business areas, basically the contact for all new business to the community.

The above testimony describes a position that is "judgmental, policy-oriented, and politically sensitive." *Riley*, 425 F.3d at 363. I agree with defendants that "there is clearly room for

13

principled disagreement in the development and implementation of plans to achieve" the goal of attracting new economic opportunities to and expanding existing economic opportunities within Calumet City. *Heck*, 985 F.2d at 310.

Arguing that the position of CED Coordinator is not exempt, Garrison relies on two types of evidence. First, Garrison has filed an affidavit in which he lists certain responsibilities associated with the position. His affidavit states:

. . .

3. As Coordinator, I had no authority to hire or fire.

4. I could not discipline.

5. I could not take independent action on projects.

6. I required permission or approval from the Executive Committee Team or the Mayor for any proposed action.

7. I prepared a form budget which was required to be submitted to and approved by John Kasparek, the city's financial consultant.

8. I would also prepare items for submission to City Council and packets of information for alderman who requested them.

. . .

Initially, it must be pointed out that it is unclear whether Garrison is attempting to describe the inherent duties of the position or instead the duties he specifically performed as CED Coordinator. *Meeks,* 779 F.2d at 420 n.1 ("[The court's] focus is on the 'inherent powers' of the office, not what any individual officeholder actually does."). In any case, nothing in Garrison's

14

affidavit calls into question the duties I earlier found determinative in concluding that the CED Coordinator position was exempt. The fact that the city council had ultimate decision-making authority over his budget and that his proposals required the approval of the executive team or the mayor does not lead to the conclusion that the position is not exempt. *See e.g. Tomczak v. Chicago*, 765 F.2d 633, 642 (7th Cir. 1985). Despite the need for approval for the budget, proposals, or hiring decisions, the CED Coordinator position still had meaningful input into the formation of Calumet City's policies.

Second, Garrison relies on conclusory statements made by himself and other deponents stating that the position of CED coordinator was not "political." Garrison testified that he did not have "political duties" associated with his position.[8] Skubisz testified that the CED Coordinator position was not "political" in his opinion, but also testified that no job in government should be

---

[8] Garrison testified:

Q. Did you have any political duties associated with director of community development?

A. No.

Q. Did anyone in the City to your knowledge have any political duties in association with their job?

A. Not that I know of.

15

"contingent" on one's "political abilities."[9]   Qualkinbush made
comments to the effect that the position was not "political."   On
the other hand, Genova testified that the position was "politically
sensitive" because "anytime you deal with the public and potential
businesses it's a sensitive matter."

As the cases previously cited state, the question of whether
a position is exempt from First Amendment protection is to be
determined by looking at the inherent powers of that position.   As
already demonstrated, the duties, powers, and nature of the CED
Coordinator are such that political affiliation is an appropriate
requirement for the position.

Having determined that the CED Coordinator position is exempt
from First Amendment protection, I do not need to address
defendants' arguments as to whether there is municipal liability

---

[9] Skubisz testified:

Q. But is the position itself political?

A. Not at all. Not at all.

Q. It's not any more political than being on the
garbage truck, is it?

A. Not at - you're right, it is not. No - no position
in government should be, let's say, contingent on
someone's political abilities.

Q. Matter of fact, it's a violation of the law to be
so, isn't it?

A. Well you know, it may be. But my response was that
no position should have any element of politics. . . .

16

for Skubisz's actions. Defendants' motion for summary judgment is granted on Garrison's claims as far as they concern Skubisz's failure to reappoint him to the position of CED Coordinator.

## II. Skubisz's Failure to Return Garrison to the Post of Water Operator

Garrison argues that Skubisz's decision to place Garrison in the Public Works Department (on the back of a garbage truck) rather than in a position in the Water Department was impermissibly based upon political considerations. Because Skubisz is not a party to this action, Garrison seeks to recover from Calumet City under principles of municipal liability.

"Municipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents." *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992). At the time of this occurrence, Skubisz was bound to follow the statutes and ordinances of Calumet City. *See* Calumet City Code § 2-32. Garrison acknowledges that at the time of his reassignment, Calumet City Code § 2-231(c) was in effect. The ordinance allows a mayoral appointee to return to the position he held with the city prior to his appointment in the event the appointment is not affirmed by the city council or his term is not renewed. Thus, if Garrison held the position of Water Operator in the Water Department prior to becoming CED Coordinator as he claims, and he never worked as a Helper in the Public Works Department as

17

defendants claim, Skubisz's refusal to reassign him to the Water Department would have directly violated (rather than implemented) Calumet City policy. Additionally, Garrison has not pointed to any evidence that the city council ratified Skubisz's decision or that the city had a widespread practice of ignoring this city ordinance by not returning appointed officers to their previous union rank. Therefore, there can be no municipal liability for Skubisz's actions and Garrison cannot establish a claim against Calumet City. *Auriemma v. Rice,* 957 F.2d at 401; *Killinger v. Johnson*, 389 F.3d 765, 772 (7th Cir. 2004). Accordingly, I grant defendants' motion for summary judgment on this claim.

## III. Qualkinbush's Failure to Reappoint Garrison to the CED Coordinator Position

Garrison also attempts to base a First Amendment claim on allegations that Qualkinbush improperly refused to reappoint him to the CED Coordinator position when she became mayor in September 2003.[10] Since I have already determined that this position is exempt from First Amendment protection, this claim also necessarily fails.

---

[10] At this time, Garrison was not employed by Calumet City in any capacity.

## IV. Qualkinbush's Failure to Return Garrison to the Post of Water Operator.

Garrison's third theory of First Amendment liability is that Qualkinbush improperly conditioned his return to the position of water pump service operator on his public support for her 2005 mayoral campaign. The record shows that the position of water pump operator was a non-supervisory position and that the duties of the position consisted primarily of monitoring water reservoir levels. Defendants have brought forth no evidence that suggests that political affiliation is an appropriate requirement for this position. See Milazzo v. O'Connell, 108 F.3d 129, 132 (7th Cir. 1997) ("Defendants bear the burden of establishing that plaintiff's position falls within the exception created in Elrod and Branti for certain policy-making or confidential positions."). Additionally, Garrison does not need to demonstrate that he had a property interest in the position in order to bring this claim (although one may exist). See Heck, 985 F.2d at 308 ("The Supreme Court, however, has frowned on arguments for limiting the ban on patronage practices to employees who possess some minimum property interest in their jobs.") (citing Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990)).

Defendants argue that Garrison has failed to submit any admissible evidence from which a fact-finder could conclude that Qualkinbush actually conditioned an offer to place Garrison in a

position in the Water Department upon his support in the 2005 campaign. I agree. Garrison relies on his own testimony, but that testimony does not support the conclusion "Qualkinbush made his political loyalty and efforts a quid pro quo for his return to the workforce." Garrison's testimony specifically states that it was he who told Qualkinbush that his support in the 2005 campaign would only be forthcoming if he was reinstated to a position in the Water Department. Garrison's testimony reads:

Q. Did Michelle Qualkinbush ever ask you personally to be active in her 2005 campaign?

A. 2005 campaign, yes.

Q. She asked you personally?

A. Yes.

. . .

Q. And what did you tell her?

A. When I was back working in the position [sic] the water department, had my back pay, was reinstated with longevity and seniority, possibly. I wasn't going to work for her until she did what she has been telling me she was going to do for months, years now.

Nor does Garrison's later-filed affidavit cure this deficiency.

His affidavit states:

In January, 2005 I filed a petition for candidacy for the 5th Ward aldermanic seat in Calumet City. Shortly after I filed the petition, on February 2, 2005, Qualkinbush called me to offer me a job. She instructed me to come into the office and talk to George Vallis and get the paperwork going. She stated that I could go back to my former position and that she just wanted 'to right a wrong.' She also said that I should have gone back to my

20

position like the ordinance said.[11]

There is no admissible evidence in the record, only speculation, that suggests Qualkinbush's efforts to work out a possible return to the water department were conditioned upon his political support. Moreover, there is no evidence to suggest that Qualkinbush ultimately acquiesced in Garrison's proposal. Accordingly, I grant Qualkinbush's motion for summary judgment on this claim.

**ENTER ORDER:**

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: July 20, 2006

---

[11] The question of whether Garrison was entitled to return to his previous position in the Water Department by operation of the Calumet City ordinance does not affect the resolution of this claim, which is premised upon Garrison's return (whether mandated by ordinance or not) being improperly conditioned upon his political support of Qualkinbush. Garrison chose not to bring a separate claim for enforcement of the ordinance. Therefore, the court does not address this issue.